**L. C. GILLMAN, Appellant,**

v.

**PHILLIPS PETROLEUM COMPANY, Appellee.**

**No. 9100.**

Court of Civil Appeals of Texas, Amarillo.

June 6, 1980.

Gassaway, Gurley, Sheets & Mitchell, Jody G. Sheets, Borger, for appellant.

---

**6.** See *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970).

Kenneth Heady, C. J. Roberts and T. L. Cubbage, II, Bartlesville, Okl., Jack Ritchie and C. H. Drinnen, Amarillo, for appellee.

DODSON, Justice.

L. C. Gillman brought this action against Phillips Petroleum Company to recover prejudgment interest on funds used by Phillips in its general corporate business. The funds were derived from the Phillips' sale of casinghead gas bought from Gillman. Gillman alleges that Phillips, without paying interest, retained and used in its corporate business a portion of funds due him from the sale of gas. Phillips maintains that Gillman was paid in full all sums due to him including interest on the retained and used funds. After a bench trial, the court rendered a take-nothing judgment. Gillman appeals from this judgment, attacking the legal and factual sufficiency of the evidence to support an implied finding of payment. We affirm.

This action evolves from a rather complicated series of events related to the sale of casinghead gas by Gillman to Phillips. The gas was produced from ten leases in the Panhandle Field of Texas. Phillips sold the gas to interstate purchasers. The interstate sales were subject to the rate and price regulation authority of the Federal Power Commission.

At various times in the early and mid 1960s Gillman acquired a part of the working interest in the ten leases. Before and after Gillman acquired his interest, Phillips was purchasing the gas from the leases under certain casinghead gas agreements. Under these agreements, the producers were paid on a monthly basis at a price calculated upon the resale price by Phillips.

At various times Phillips made application to the Federal Power Commission for a price increase on the sale of gas to interstate purchasers. Complying with federal law, Phillips was authorized to collect the proposed price increase pending final determination of the fair and just rate by the Federal Power Commission. Under the federal law, Phillips was required to post bond and guarantee reimbursement of all unapproved portions of the proposed price increases plus interest. The proposed rate increases were pending before the Federal Power Commission for a number of years. During this period and prior to 1971, Phillips paid the producers for the gas on the basis of sustained or approved rates only. Phillips retained and used in its general corporate business the unapproved portions of the proposed price increase.

In Federal Power Commission Opinion No. 586, dated 18 September 1970, the Commission established the sale prices applicable to the interstate sales from the ten leases related to this action. The State of California appealed the Federal Power Commission's opinion and the accompanying order. In *In re Hugoton-Anadarko Area Rate Case*, 466 F.2d 974 (9th Cir. 1972), the court affirmed the action of the Federal Power Commission. Opinion No. 586 and the accompanying order became final on 30 October 1972.

In 1971, proceeding under indemnity agreements executed with the various producers, Phillips began retroactive payments for the gas based upon the proposed price increases pending before the Federal Power Commission. The indemnity agreements required the producers to reimburse Phillips for any portions of the proposed price increases plus interest which were not ultimately sustained by the Federal Power Commission. Gillman executed an indemnity agreement with Phillips. In June of 1971, Phillips paid Gillman $28,206.04, and in August 1971, Phillips paid Gillman an additional sum of $654.84 for a total of $28,860.88.

In 1974, acting under the terms of the 1971 Indemnity Agreement, Gillman refunded $9,536.58 plus interest to Phillips and retained $19,324.30 previously paid to him by Phillips. On 22 October 1976, Gillman filed this action for interest on the retained funds. Phillips answered the suit on 15 November 1976, claiming payment in full.

Neither party requested the trial court to make findings of fact and conclu-

sions of law. Thus, none were filed by the trial court. Nevertheless, Gillman maintains that the judgment should be reversed because no evidence exists to support an implied finding of payment in full by Phillips. In *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609, 613 (1950) the court said:

> No findings of facts or conclusions of law were requested of or filed by the trial judge. The trial court's judgment, therefore, implies all necessary fact findings in support of the judgment. In seeking to determine whether there is any evidence to support the judgment and the implied findings of fact incident thereto "it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature." *Austin v. Cochran*, Tex.Com.App., 2 S.W.2d 831, 832; *Cartwright v. Canode*, 106 Tex. 502, 171 S.W. 696.

The evidence shows that in 1971 and 1972 Phillips paid Gillman $28,860.88 under the Indemnity Agreement; that in 1974 Gillman reimbursed $9,536.58 plus interest; and that Gillman retained the principle balance of $19,324.30. The evidence further shows that Gillman was entitled to only $13,042.01 for previously unpaid sales of gas to Phillips which in turn were sold by Phillips to interstate purchasers; and that he was entitled to interest on the $13,042.01 sum in the amount of $6,225.54. Thus, this evidence shows that Gillman was paid at least $56.75 more than he was owed by Phillips. In the legal sense, payment is the discharge of an obligation in whole or in part by the actual or constructive delivery of money or its equivalent, by the obligor or someone for him to the obligee for the purpose of extinguishing the obligation in whole or in part and the acceptance as such by the obligee. 60 Am.Jur.2d *Payment* § 1 (1972).

Nevertheless, Gillman maintains that he was entitled to only $13,042.01 of the $19,324.30 disbursed to him by Phillips under the Indemnity Agreement; that the difference of $6,282.29 belongs to the prior owners of the ten leases which he purchased in the early and mid 1960s; and that Phillips is not entitled to credit the $6,282.29 against the $6,225.54 interest due him, because Phillips did not own the money and could not pay him with money belonging to someone else. In essence, he says the claimed payment by Phillips is analogous to payments by a third party to a creditor. In support of this position he relies on the following statement from *Corbin on Contracts*:

> To operate as satisfaction, the fact that part payment is by a third person must be within the *contemplation of the creditor* (emphasis ours) as part of agreed exchange for discharge of the debt.

6 A. Corbin, Contracts § 1285 (1962). This statement has no applicability to the case before us. The evidence shows that Gillman was paid with money from Phillips' general corporate operating account. Assuming arguendo that Phillips owed money to other parties, the evidence fails to show that any creditor had claim to any particular money retained by Phillips. Accordingly, the record fails to show that Phillips paid Gillman with money owned by a third party.

In further support of his position, Gillman relies on a statement from *Greenwood v. Senter*, 44 S.W.2d 504, 505 (Tex.Civ.App. —Texarkana 1931, *aff'd in part and rev'd in part*) 61 S.W.2d 812 (Tex.Com.App.1933, holding approved), in which the court stated:

> Whether or not a transaction constitutes payment in termination of liability depends upon the intention of the parties, and acts which might otherwise constitute payment will not do so when the parties do not so intend.

In essence, the gist of Gillman's contention is that the parties did not intend for the $6,282.09 to serve as payment for interest in the amount of $6,225.54 on the $13,042.01 sum. Yet, the record, except as it may reflect the acts and conduct of the parties, contains no evidence to support the contention of intent so as to justify a disturbance of the trial court's implied finding of payment.

Moreover, in the absence of expressed mutual intent, the best evidence of the parties' intent is the interpretation they placed upon their transaction. *See, e. g., Lone Star Gas Co. v. X-Ray Gas Co.*, 139 Tex. 546, 164 S.W.2d 504, 508 (1942); *Droemer v. Transit Mix Concrete of Gonzales, Inc.*, 457 S.W.2d 332, 335 (Tex.Civ. App.—Corpus Christi 1970, no writ); *Danaho Refining Co. v. Dietz*, 398 S.W.2d 307, 311 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.). In the situation presented by this record, the acts of the parties themselves furnish the construction they mutually placed upon their transaction at the time. The undisputed evidence shows Gillman reimbursed Phillips $9,536.58 plus interest in 1974 to balance their mutual obligations, leaving $19,324.30 that Phillips paid and Gillman received in 1971 and 1972. Such amount is greater than the full sum owed by Phillips to Gillman. Since the date of payment, Gillman has had the full use of the money. Also, Phillips never requested Gillman to return any portion of the $19,-324.30 amount. Likewise, Gillman never offered to return the $6,282.09 amount. Furthermore, by his pleadings, Gillman does not claim that any of the money received by him belonged to any third party, nor did he tender the $6,282.09 amount to the court or request the court to make a disposition of the money to any rightful owner. Moreover, Gillman does not contend or attempt to show that by legal process or otherwise he is in jeopardy of having to pay the money to any third party. Thus, under the circumstances, we conclude probative evidence does exist to support the trial court's implied finding of payment.

Gillman further says the judgement should be reversed because the evidence is factually insufficient to support the trial court's implied finding of payment. In determining this evidentiary challenge, we must review all of the evidence in the record to determine if the finding is so against the great weight an preponderance of the evidence as to be manifestly wrong or unjust. Having done so, we overrule the factual sufficiency challenge.

In summary, we overrule Mr. Gillman's three points of error which are paraphrased in the contentions discussed herein. Accordingly, the judgment of the trial court is affirmed.

COUNTISS, J., not participating.